# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### at CHATTANOOGA

|  |  |  |
|---|---|---|
| BROADCAST MUSIC, INC., | ) | |
| *et al.*, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | No. 1:04-CV-387 |
|  | ) | |
| MIRAGE IMAGES, INC. d/b/a IMAGES, and | ) | Judge Curtis L. Collier |
| JOHN L. BLEWETT and CHARLES D. | ) | |
| ROBERTS, each individually, | ) | |
|  | ) | |
| Defendants. | ) | |

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Plaintiffs Broadcast Music, Inc.,

Universal-Duchess Music Corporation, Warner-Tamerlane Publishing Corp., Sony/ATV Songs LLC

d/b/a Sony/ATV Tree Publishing, Songs of Universal, Inc., Universal–Songs of Polygram

International, Inc., Estate of John Lennon and Yoko Ono, a partnership d/b/a Lenono Music,

Sony/ATV Songs LLC, Mann and Weil Songs, Inc., EMI Blackwood Music, Inc., Dennis N. Linde

d/b/a Rising Gorge Music, Anthony L. Ray d/b/a Mix-A-Lot Publishing, Inc., Fox Film Music

Corporation, Kenneth B. Edmonds, an individual d/b/a ECAF Music, John Ondrasik, an individual

d/b/a Five For Fighting Music (collectively referred to as "Plaintiffs") (Court File No. 13).  In

deciding this motions, the Court has considered Plaintiffs' briefs and supporting documentation

(Court File No. 13, Exh. 1-4; Court File No. 17) and Defendants Mirage Images, Inc. d/b/a Images,

John L. Blewett, and Charles D. Roberts' (collectively referred to as "Defendants") response and

supporting documentation (Court File No. 16 and Exh. 1 thereto).  The Court need not conduct an

evidentiary hearing to decide this motion, and, for the following reasons, Plaintiffs' motion for summary judgment will be **GRANTED** in part and **DENIED** in part (Court File No. 13). Plaintiffs will be **GRANTED** summary judgment as to Defendants' liability for copyright infringement and will be awarded the relief of a permanent injunction and statutory damages, but Plaintiffs' request for attorney's fees and costs will be **DENIED.**


# I.    STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or

determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.  RELEVANT FACTS

This case revolves around federal copyright laws that govern the playing of recorded music in nightclubs. Plaintiff Broadcast Music, Inc. ("Plaintiff BMI") describes itself as a performing rights organization (*see* Court File No. 13, Exh. 4, Affidavit of Judith M. Saffer ("Saffer Aff.") ¶ 3). The other plaintiffs are owners of the rights under federal copyright laws to publicly perform certain compositions, and include songwriters and music publishing companies (*id.* ¶¶ 2, 5). These owners have granted a non-exclusive public performance right to Plaintiff BMI, along with the rights to issue public performance license agreements to music users, maintain actions for infringement of the public performance rights in their musical compositions, and seek damages for such infringement (*id.*). Plaintiff BMI in turn grants the right to publicly perform any of the more than 4.5 million musical works in its repertoire, by means of a "blanket license agreement," to those who use music

in their business establishments, such as the owners and operators of nightclubs, concert halls, restaurants, and hotels, as well as broadcasters (*id*.). Plaintiff BMI then distributes its income to the songwriters and music publishers who have granted it non-exclusive public performance rights in their compositions (*id*. ¶ 3).

Defendant Mirage Images, Inc. d/b/a Images ("Defendant Images") describes itself as a small nightclub called "Images" which is located in Chattanooga, Tennessee and has a maximum capacity of 300 persons (*see* Court File No. 16, Exh. 1, Affidavit of John L. Blewett ("Blewett Aff.") ¶¶ 1, 6). Defendant John L. Blewett is the president and owner of Defendant Images (*id*. ¶ 1). Defendant Charles D. Roberts is the corporate secretary of Defendant Images and is the manager of Images nightclub (*see* attachments to Court File No. 13, Exhibit 2, Affidavit of James R. Newsom III ("Newsom Aff.")). According to Defendant Blewett, Defendant Images has not been profitable in any of the years 2000-2004 (*id*. ¶ 7).

Plaintiff BMI's vice president of general licensing Lawrence E. Stevens states in his affidavit "[l]icense agreements were sent on multiple occasions to [Defendant Images]" and "BMI's records indicate that BMI licensing personnel telephoned Images on thirty-eight occasions and spoke to persons associated with the establishment's operation. A representative visited Images on one occasion" (Court File No. 13, Exh. 3, Affidavit of Lawrence E. Stevens ("Stevens Aff.") ¶¶ 2, 4).

Attached to Stevens' affidavit as Exhibit One are letters, the first 18 of which are addressed from Plaintiff BMI to "John Drued"[1] at Images nightclub's address. Each letter indicates an "EDE Music License" was sent to Defendant Images as an enclosure in the mailing. The first letter, dated

---

[1]The Court presumes this is a misspelling of "John Blewett" although neither party mentioned it in their briefs.

March 24, 2003, notifies "Mr. Drued" he must obtain a license to play recorded music in Images nightclub under United States copyright law, and offers a blanket license with Plaintiff BMI that would grant him the right to play the recorded music of all BMI songwriters and publishers. The second letter, dated April 3, 2003, apparently is a response to a communication with "Mr. Drued" in which he inquired about music licensing generally.[2] The next letter, dated April 10, 2003, responds to another communication with "Mr. Drued" in which he apparently indicated he is licensed with the American Society of Composers, Authors & Publishers ("ASCAP"), another performance rights organization that functions similarly to Plaintiff BMI but has its own repertoire of compositions that is different from that of BMI. This letter informs "Mr. Drued" any license with other performance rights organizations does not cover compositions licensed through Plaintiff BMI, and "Mr. Drued" will need a license from BMI to play its songs at Images nightclub. A fourth letter, dated May 6, 2003, is identical in content to the April 3, 2003 letter. A fifth letter, dated June 6, 2003, is apparently in response to a request from "Mr. Drued" for a list of the compositions in Plaintiff BMI's repertoire, and indicates how he can obtain such a list. The sixth letter, dated July 16, 2003, is a follow-up letter after "Mr. Drued" apparently spoke to one of Plaintiff BMI's representatives on the phone, and requests "Mr. Drued" review the enclosed license agreement, sign and return it with a remittance in the amount of $1,560.00.

The seventh letter, dated July 28, 2003, notes the multiple communications between "Mr. Drued" and Plaintiff BMI, and the fact "Mr. Drued" had not yet signed a BMI music license. This letter further reiterates the copyright laws relevant to businesses that play recorded music. The

---

[2]It is unclear whether Defendant Images sent any written correspondence to Plaintiff BMI; neither party has included any its filings.

5

eighth  letter, dated August 6, 2003, essentially restates the information in the July 28, 2003 letter.

The ninth letter, dated September 1, 2003, again restates the general licensing information in the

April 3, 2003 letter.  The tenth letter, dated September 11, 2003, notes Plaintiff BMI has been

"unable to elicit ["Mr. Drued"'s] cooperation in resolving this matter" of copyright law compliance.

The drafter, licensing executive Greg Brandon,  further states "this must be my last attempt to do

so . . . before I turn your file over to my supervisor for review."  Brandon also drafted the eleventh

letter, dated October 1, 2003, which is identical to that of September 11, 2003.

The twelfth letter, dated October 6, 2003 and drafted by an assistant vice president of general

licensing, states, after noting the repeated unsuccessful attempts by Plaintiff BMI to induce "Mr.

Drued" to sign a BMI music license, "[t]he choice is now entirely up to you.  If we are still without

the completed license (enclosed), after 15 days from the date of this letter, I will be forced to

consider whatever action appropriate to protect the interests of our songwriters, composers, and

publishers."  A director of general licensing drafted the thirteenth letter, dated November 3, 2003,

and requests a response from "Mr. Drued" on a form requiring him to check either a box indicating

he has decided not to sign Plaintiff BMI's license or a box indicating he already has signed and

returned the license.  The letter further states, ". . . the continued use of BMI licensed music without

permission will leave me no alternative other than to refer this matter to our attorneys."  Stevens

drafted the fourteenth letter, which requests "Mr. Drued" complete and sign the enclosed music

license and remit a fee of $1,560.00 for the period of July 1, 2003 to June 30, 2004 within five days,

or he will have "no alternative other than to refer this matter to our attorneys."

The fifteenth letter, dated December 31, 2003, was drafted by an attorney in Plaintiff BMI's

licensing department, informing "Mr. Drued" his business is not licensed to perform music in BMI's

repertoire, requesting he discontinue the public performance of this music, and advising him "any unlicensed performance of BMI-affiliated music may result in substantial damages under the Federal Copyright Law." Stevens then wrote the sixteenth letter, dated January 22, 2004, stating

> As you have not responded to our correspondence and in the absence of a license agreement with BMI, this shall serve as formal notice to you that effective this date, you must cease all use of BMI licensed music in your business or organization. The continued use of music in the BMI repertoire without authorization will result in copyright infringement. Copyright infringement is a violation of federal law. Copyright infringement may subject you to substantial damages. BMI is prepared to take whatever action may be necessary to protect the right of its composers and publishers . . .

Stevens also wrote the seventeenth letter, dated April 8, 2004, reminding "Mr. Drued" the cease and desist letter remained in effect and "[v]iolations of copyright law are expensive." A senior director of general licensing then drafted the eighteenth letter, dated June 30, 2004, which is virtually identical to the April 10, 2003 letter and apparently was in response to further communications from "Mr. Drued" questioning the need to obtain a license from Plaintiff BMI when he already had a license with ASCAP.

The nineteenth letter, dated August 2, 2004 and for the first time addressed to "John Blewett," was drafted by a director of general licensing and includes all of the letters previously sent to Defendant Images regarding licensure with Plaintiff BMI. This letter states, "Your failure to return the signed agreement within the stated time will leave us with no alternative other than to consider whatever action appropriate [sic] for the protection of our rights." All subsequent letters were addressed to "John Blewett."

Stevens states in his affidavit BMI directed Barry Seidel, a music researcher, to visit Images nightclub on September 21 and September 27, 2004 to make written reports of the music being publicly performed on those occasions (Stevens Aff. ¶¶ 5, 6). These reports, which Seidel certified

7

to be true and correct, include a list of all songs played while Seidel was present at Images nightclub from approximately 9:05 p.m. until 1:35 a.m. on September 21-22 and 10:12 p.m. until 1:45 a.m. on September 27-28 (*see id.*, Exh. 2). During the September 21 visit, Seidel's report indicates a male disc jockey ("DJ") played recorded music from compact discs ("CDs"), and four dancers also performed. The songs "Superman (a/k/a Superman It's Not Easy)," "Car Wash," and "Exhale (Shoop Shoop)" were played on this evening. Each of these songs is the subject of infringement claims in the present lawsuit. On the September 27 visit, Seidel noted a male DJ hosted karaoke[3] and "various participants" performed with recorded songs played on the karaoke equipment. The songs "Just Once," "Goodbye Earl," "God Bless the U.S.A.," "Don't Take the Girl," "Imagine," and "Baby Got Back" were played that night. Each of these songs also is the subject of infringement claims in the present lawsuit.

The twentieth letter, dated September 30, 2004 and drafted by Stevens, is identical to that of April 8, 2004, reiterating the cease and decease letter remains in effect, but does not mention Seidel's visits to Images nightclub. However, Stevens' next letter, dated October 8, 2004, notifies Defendant Blewett "infringement of BMI copyright controlled music occurred in your establishment on September 27, 2004 and was noted by our representative." The letter goes on to detail fees for a license for the dates April 2003 through March 2005 totaling $5,475.00, plus "Music Researcher costs of $1,087.20" (presumably for Seidel's visits to Defendant Images in September). The letter requests Defendant Blewett remit such amounts and sign a license, or Stevens will be left "with no

---

[3]"Karaoke" is a popular form of entertainment often sponsored by nightclubs, defined as "an act of singing along to a music video, esp. one from which the original vocals have been electronically eliminated." Webster's College Dictionary 738 (Robert B. Costello ed., Random House 1995) (1991).

alternative other than to refer this mater to our attorneys for whatever action they deem necessary."

The twenty-first and final letter, nearly identical to the October 8, 2004 letter, was mailed to

Defendant Blewett on November 11, 2004. This final letter added that infringement occurred on

September 21, 2004 and requested lower fees than previously had been requested, for the dates May

2003 through April 2005 totaling $3,225.00, as well as "Music Researcher costs of $1,087.20." The

letter states these fees were "as adjusted by our Music research conducted," which the Court again

presumes was based on information obtained during Seidel's September visits. Stevens states in his

affidavit Defendant Images has not ever entered into a license with Plaintiff BMI (Stevens Aff. ¶

3).

Defendant Blewett in his affidavit states Defendant Images "retained the services of a disc

jockey who is an independent contractor and who in his sole discretion, selected any music played

in Images during the time period alleged in the Plaintiff's [sic] Complaint" (Blewett Aff. ¶ 2).

Defendant Blewett further states he assumed the DJ had any licenses that would be required to play

the music he selected, and he does "not recall whether or not any correspondence, telephone call or

any other communication was received from Broadcast Music, Inc. or its attorney prior to the

initiation of [this] lawsuit . . ." but "[i]f I received such communications, I would not have been

concerned as I assumed the disc jockey had all appropriate licenses" (*id.* ¶¶ 3-5). Defendant Blewett

finally asserts neither he, Defendant Roberts, nor any other employee of Defendant Images "was

aware of any alleged copyright infringement related to any music played at Images prior to the

initiation of the lawsuit by Plaintiffs" (*id.* ¶ 8).

On December 17, 2004, Plaintiffs filed the present lawsuit, alleging Defendants infringed

the copyrights of nine songs by unauthorized public performance of the songs on the dates detailed

above (Court File No. 1). Plaintiffs seek an injunction prohibiting Defendants and their agents from further infringing these and other works; statutory damages under 17 U.S.C. § 504(c); costs including reasonable attorney's fees pursuant to 17 U.S.C. § 505; and such other relief as is just and equitable.

## III. DISCUSSION

### A. Infringement

Under the Copyright Act, the owner of a copyright has the exclusive right to perform or authorize others to perform the copyrighted work publicly. 17 U.S.C. § 106(4). In the case of a copyrighted song, this means the owner of the copyright in the musical composition must give permission for a business establishment such as a nightclub to play a live or recorded version of the song. Plaintiffs here claim Defendants infringed their copyright in the nine songs listed in the schedule attached to their Complaint (*see* Court File No. 1, Exh. 1) by playing recordings of them publicly, in Images nightclub, without any authorization from them.

"Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . ." 17 U.S.C. § 501(a). A claim for infringement of the public performance right requires proof of "(1) the originality and authorship of a composition; (2) a valid copyright under the formalities of the Copyright Act; (3) claimant's ownership of the copyright at issue; (4) defendant's public performance of the composition; and (5) defendant's failure to obtain permission from the claimant for such performance." *Jobete Music Co. v. Johnson Communs., Inc*., 285 F. Supp. 2d 1077, 1082 (S.D. Ohio 2003) (*citing Varry White Music v. Banana Joe's of Akron, Inc*., 2002 U.S. Dist. LEXIS 25736 (N.D. Ohio Oct. 28, 2002); *Superhype Pub., Inc. v. Vasiliou*, 838 F. Supp. 1220, 1224 (S.D. Ohio 1993); *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc*., 499

10

U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991); *Coles v. Wonder*, 283 F.3d 798 (6th Cir. 2002)).

Defendants in their response to Plaintiffs' motion for summary judgment do not contest they are liable for copyright infringement (*see* Court File No. 16). Plaintiffs have submitted the affidavit of Judith M. Saffer, an assistant general counsel of Plaintiff BMI, in support of the first three elements of their claims. Saffer states each copyright was registered with the United States Copyright Office and a registration certificate was issued by the United States Copyright Office to the relevant plaintiff or a predecessor in interest (Saffer Aff. ¶ 4). Additionally, Plaintiffs attached the certificates and other documentation showing the chain of title in the compositions as Exhibit A to Saffer's affidavit. A copyright certificate is prima facie evidence of the first three elements for an infringement claim. 17 U.S.C. § 410(c); *see also Jobete*, 285 F. Supp. 2d at 1082. Based on Plaintiffs' filings, the Court finds Plaintiffs have met their burden of proving the first three elements of their copyright infringement claims.

Further, the "Certified Infringement Reports" prepared by Seidel and certified to be true based on his personal knowledge under penalty of perjury, establish the fourth element, Defendants' public performance of the compositions (*see* Stevens Aff., Exh. 2), and Stevens' statement in his affidavit Defendants have not entered into a license with Plaintiff BMI demonstrates Defendants' failure to obtain permission from Plaintiffs for such performance. Therefore, the Court finds Plaintiffs also have met their burden of proving the final two elements of their copyright infringement claims. Because no genuine issue as to any material fact exists and the moving parties (Plaintiffs) are entitled to a judgment as a matter of law, the Court will **GRANT** Plaintiffs' motion for summary judgment on their copyright infringement claims (Court File No. 13).

### B. Plaintiffs' Requested Relief

#### 1. Injunction

Plaintiffs first request a permanent injunction prohibiting Defendants from further infringement of copyrights in compositions licensed by Plaintiff BMI. The Copyright Act authorizes a court to order temporary or final injunctive relief as a remedy for infringement "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Plaintiffs allege Defendants not only have infringed their copyrights, but continue to do so to this day (Stevens Aff. ¶ 7). Defendants have offered no evidence to the contrary and do not contest the propriety of a permanent injunction in this case.

Under Fed. R. Civ. P. 65, the Court in issuing an injunction shall "set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . ." Fed. R. Civ. P. 65(d). Because the Court finds Plaintiffs have shown, as set out *supra* in the Facts section of this Memorandum, Defendants have infringed their copyrights in an ongoing manner after having been informed of the infringement, the Court also finds an injunction is appropriate relief under the Copyright Act to prevent further infringement of Plaintiffs' copyrights by Defendants. Therefore the Court will **GRANT** Plaintiffs' request for an injunction, the specific terms of which will be detailed in a separate Order in accordance with Fed. R. Civ. P. 58. *See Princeton Univ. Press v. Michigan Document Servs.*, 99 F.3d 1381, 1392 (6th Cir. 1996).

#### 2. Statutory Damages

##### a. Generally

Under the Copyright Act, an infringer is liable for either the copyright owner's actual

damages and any additional profits of the infringer, or statutory damages. 17 U.S.C. § 504(a).

Plaintiffs request Defendants be ordered to pay statutory damages on each claim of infringement,

as provided under the Copyright Act in 17 U.S.C. § 504(c). That section allows a copyright owner

to

> . . . elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $ 750 or more than $ 30,000 as the court considers just.

17 U.S.C. § 504(c)(1). However,

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $ 150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $ 200 . . .

17 U.S.C. § 504(c)(2). Plaintiffs argue Defendant's infringement was "repeated, continual and [in]

blatant disregard for Plaintiffs' copyrights," and request a total award of $27,000, or $3,000 for each

infringement of a composition (*see* Court File No. 13, Exh. 2 at 16-18). However, Plaintiffs do not

assert Defendants' conduct was "willful," and since their requested amount of damages is well

within the range in § 504(c)(1) the Court has discretion to award without a showing of willfulness,

the Court need not inquire whether "the copyright owner [has] sustain[ed] the burden of proving,

and the court finds, that infringement was committed willfully" under § 504(c)(2). Additionally,

Defendants do not argue they "[were] not aware and had no reason to believe that [their] acts

constituted an infringement of copyright," therefore the Court need not analyze whether Defendants

have met their burden of so proving, which would allow the Court to award statutory damages below

the $750 minimum in § 504(c)(1), but "not less than $200," under § 504(c)(2).

The Court's only inquiry, then, with respect to each work that was infringed, is what amount of damages "the court considers just" between "a sum of not less than $ 750 or more than $ 30,000." 17 U.S.C. § 504(c)(1). The Supreme Court has held this statute vests in the trial court "broad discretion" in determining just damages. *See F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231, 73 S. Ct. 222, 97 L. Ed. 276 (1952). The Court further held,

> . . .the court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, is made the measure of the damages to be paid, but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum. Within these limitations the court's discretion and sense of justice are controlling, but it has no discretion when proceeding under this provision to go outside of them."

*Id.* at 232 (*quoting L. A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106-107, 39 S. Ct. 194, 63 L. Ed. 499 (1919)). Finally, the Court noted the statutory damages rule, "formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *Id.* at 233.

Plaintiffs argue an award of $3,000 per infringement is reasonable and justified in light of Defendants' infringement, and note this amount has been held to be appropriate in other cases where an infringement was the result of deliberate indifference toward copyright laws. Defendants, in contrast, argue statutory damages of no more than $750 per infringement, the statutory minimum in § 504(c)(1), are appropriate here because they "had no belief that any alleged copyright infringement was allegedly occurring at Images during the relevant period" (Court File No. 16 at 7). Defendants point to Defendant Blewett's affidavit in support of this argument. As noted *supra*, Blewett stated he does "not recall whether or not any correspondence, telephone call or any other

communication was received from Broadcast Music, Inc. or its attorney prior to the initiation of [this] lawsuit . . ." but "[i]f I received such communications, I would not have been concerned as I assumed the disc jockey had all appropriate licenses" (Blewett Aff. ¶¶ 3-5).

Even if Defendants did not understand the laws of vicarious liability, which in most cases do not protect nightclub owners from liability for violations of copyright law by independent contractors such as DJs, Defendants cannot colorably argue after being contacted and notified on numerous occasions their conduct constituted copyright infringement, they actually, in good faith, believed their conduct was not in fact infringing. First of all, from the correspondence submitted by Plaintiff BMI, Defendants indicated to BMI they had obtained a blanket license from another performing rights organization, ASCAP (*see* Exh. 1 to Stevens Aff., letters dated April 10, 2003 and June 30, 2004). Defendants certainly would not have paid to obtain a license from any performing rights organization if they had believed the DJs they employed to play music were the responsible parties for any licenses. Additionally, as further indicated in the correspondence submitted by Plaintiff BMI, Defendants spoke to BMI representatives about the need for a license on multiple occasions and BMI representatives notified them their establishment was required by law to be licensed to play music in the BMI repertoire, sent them a booklet from the Better Business Bureau outlining the responsibilities of businesses who play music, and also gave them a phone number to contact the United States Copyright Office for further inquiries (*see id.*). After a total of 21 letters and 38 phone calls from Plaintiff BMI regarding this infringement, the Court finds Defendants knowingly and intentionally violated the Copyright Act by continuing to play songs in Plaintiff BMI's repertoire without obtaining a license to do so legally.

That said, the Court finds Defendants should be liable for more than the statutory minimum

of $750 per infringement, but Plaintiffs' suggestion of $3,000 is too high. Following the *Woolworth* Court's direction to take into account "the court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like," the Court finds appropriate statutory damages of $2,000 for each act of infringement, for a total amount of damages of $18,000. This $2,000 amount is a rounded-up approximation of $1,635, the amount Plaintiff BMI repeatedly offered to charge Defendants for a blanket license for one year. Such an amount will serve not only to show Defendants it is much less expensive to comply with copyright laws than to flout them, but also is an appropriate measure of the amount of harm considering Defendants operated a small establishment that, according to Defendant Blewett's affidavit, never turned a profit (Blewett Aff. ¶ 7) and, on the occasions BMI's music researcher Seidel visited, contained far fewer patrons than its capacity would allow (Stevens Aff., Exh. 2).

### b. Individual Liability for Defendants Blewett and Roberts

Plaintiffs further argue not only Defendant Images, but also Defendants Blewett and Roberts individually, may be held jointly and severally liable with Defendant Images for the copyright infringement that occurred at Images nightclub. Defendants Blewett and Roberts do not contest this individual liability.

The Copyright Act states, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . ." 17 U.S.C. § 501(a). This has been interpreted to include others besides those who actually perform the composition in public, particularly the owners of establishments where infringement takes place. *See Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161-62 (2d Cir. 1971) (concert promoter vicariously liable for infringing performance); *see also Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d

16

304 (2d Cir. 1963) (one who has promoted or induced the infringing acts of the performer jointly and severally liable as a "vicarious" infringer even though he had no actual knowledge of infringement, and even in the absence of an employer-employee relationship if he had right and ability to supervise the infringing activity and a direct financial interest in such activities); *Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*, 36 F.2d 354 (7th Cir. 1929) ("The authorities are, we believe, unanimous in holding that the owner of a dance hall at whose place copyrighted musical composition are played in violation of the rights of the copyright holder is liable, if the playing be for the profit of the proprietor of the dance hall. And this is so even though the orchestra be employed under a contract that would ordinarily make it an independent contractor."). The Second Circuit has stated that, in its landmark decision in *Shapiro,* which held a department store vicariously liable for infringement by a concessionaire that sold pirated records in the store, it "attached no special significance to the technical classification of the [store-concessionaire] relationship. Rather it found the policies of the copyright law would be best effectuated if [the store] were held liable, even in the absence of actual knowledge that the copyright monopoly was being impaired, for its failure to police the conduct of the primary infringer." *Gershwin*, 443 F.2d at 1162.

The Sixth Circuit has stated "a defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and 'has the right and ability to supervise' the infringing activity." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) (*quoting Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). "[C]opyright infringement is a tort, for which all who participate in the infringement are jointly and severally liable." *Jobete*, 285 F.Supp. 2d at 1083 (*quoting Realsongs v. Gulf Broadcasting Corp.*, 824 F.

Supp. 89, 91 (M.D. La. 1993). The *Jobete* court extended vicarious liability for copyright infringement to individual corporate officers of an infringing codefendant corporation, using the two-step test from *Bridgeport*, quoted above, in its analysis. *Id.* at 1083-84. Thus, Defendants Blewett and Roberts can, as corporate officers of Defendant Images, individually be held jointly and severally liable for the copyright violations by independent contractors, such as DJs, hired to play music at Images nightclub, if Plaintiffs can show they both enjoyed a direct financial benefit from the infringing activity and had the right and ability to supervise the infringing activity. *Id.*

As to the first element of vicarious liability, the infringing acts occurred during Images nightclub's business hours, when music was played to enhance the atmosphere and for the enjoyment of its patrons, and Images nightclub obtained a direct financial benefit from its infringement, since it played songs in Plaintiff BMI's repertoire for free, rather than paying BMI's requested license fee. As corporate officers, Defendants Blewett and Roberts had a direct financial interest in Images and also benefitted directly from this infringement. *See Jobete*, 285 F.Supp. 2d at 1084.

With regard to the second element of vicarious liability, Defendant Blewett asserts neither he nor Defendant Roberts had "control over the [DJ's] selection of a playlist or the playing of such music" (Blewett Aff. ¶ 2). However, the test is not "control," it is "the right and ability to supervise." *See Bridgeport*, 376 F.3d at 621. Defendant Blewett does not elaborate on this lack of "control" over the DJ, or specify any instance that would demonstrate the DJ operated completely unsupervised. The Court finds it unlikely that the owner, Defendant Blewett, and manager, Defendant Roberts, of a night club, after hiring a DJ as an independent contractor, would not retain some right and ability to supervise the type of music the DJ played. If the night club catered to a

clientele that particularly enjoyed country music, and the DJ played exclusively music of a contrary genre, such as rock and roll, it is likely the night club owner or one of its agents would direct the DJ to play music more in line with its customers' tastes. Plaintiffs, who bear the burden of proof and against whom the Court must draw all reasonable inferences because they are the moving party, *Matsushita,* 475 U.S. at 587-88, have pointed out Defendants' responses to their requests for admissions collectively indicate Defendants Blewett and Roberts had the general right and ability to control the premises (*see* Exh. B to Saffer Aff.). Defendants Blewett and Roberts have not presented any evidence on this matter to refute their admissions, other than conclusory statements in their brief. Because a respondent to a motion for summary judgment is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim, *Celotex,* 477 U.S. at 324, the Court finds Plaintiffs have shown Defendants Blewett and Roberts had the general right and ability to control the premises and therefore the independent contractors they hired. The second element of vicarious liability also is met, and the Court finds Defendants Blewett and Roberts may be held individually, jointly and severally liable with Defendant Images for the infringements here.

### 3. Costs and Attorney's Fees

Finally, Plaintiffs request costs and attorney's fees under the Copyright Act, which provides, "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party. . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has noted "the word 'may' clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion." *See Fogerty*

*v. Fantasy, Inc.*, 510 U.S. 517, 533, 127 L. Ed. 2d 455, 114 S. Ct. 1023 (1994). The *Fogerty* Court listed "several nonexclusive factors that courts should consider in making awards of attorney's fees to any prevailing party," including "'frivolousness, motivation, objective unreasonableness (both in fact and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 535 n. 19 (*quoting Lieb v. Topstone Industries, Inc*., 788 F.2d 151, 156 (3d Cir. 1986)). Following *Fogerty*, the Sixth Circuit in a recent case focused on attorney's fees as a sanction for improper litigation tactics, where deterrence is particularly necessary. *See Bridgeport Music*, 376 F.3d at 628.

The Court, in its discretion under the Copyright Act, prefers to award attorney's fees and costs in copyright cases only where the plaintiff has shown the defendant's conduct was particularly egregious, either in the infringement or during litigation, in order to act as a deterrent to such conduct and further penalize such actors. After evaluating all the facts and circumstances in this case, the Court finds, while the infringement here was both knowing and intentional, it was not particularly egregious, and Defendants did not contest their liability for it during litigation. Plaintiffs have not shown any evidence of a coverup, gross misconduct during litigation, or any other actions by Defendants the Court would particularly like to discourage. Therefore, the Court will **DENY** Defendants' request for attorney's fees and costs.

20

**IV.     CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion for summary judgment (Court File No. 13) will be **GRANTED** in part and **DENIED** in part.  Plaintiffs will be **GRANTED** summary judgment as to Defendants' liability for copyright infringement and will be awarded the relief of a permanent injunction and statutory damages, but Plaintiffs' request for attorney's fees and costs will be **DENIED**.

An Order shall enter.


/s/_____
**CURTIS L. COLLIER, CHIEF
UNITED STATES DISTRICT JUDGE**